UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWANDA JACKSON,
o/b/o K.M.W.,

        Plaintiff,

v.                                CASE No. 8:20-cv-2013-JSM-TGW

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

        Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of the claimant, of whom she is the permanent legal guardian.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, I recommend that the decision be affirmed.

_____

[1]Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 1.02.

I.

K.M.W. was born on July 23, 2013, and was six years old and considered a preschooler at the time of the administrative decision. On June 22, 2017, the plaintiff, who is the child's permanent legal guardian, filed a claim for supplemental security income on behalf of the child (Tr. 79). She alleged that K.M.W. was disabled due to a speech and language impairment, and she subsequently expressed concerns about his conduct (id., Tr. 230). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that K.M.W. suffers from severe impairments of speech language impairment with a deficiency in reading, attention-deficit hyperactivity disorder (ADHD) and/or hyperkinesis with developmental delay, rule out developmental disorder (Tr. 20).

The law judge concluded that the child did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix (id.).

The law judge also found that "[t]he claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings" (Tr. 21).   In this regard, the law judge considered the six domains of functioning, and found that the child had less than a marked limitation in the domain of acquiring and using information (Tr. 26); less than a marked limitation in attending and completing tasks (Tr. 27); less than a marked limitation in interacting and relating with others (Tr. 28); no limitation in moving about and manipulating objects (Tr. 29); no limitation in the ability to care for himself (Tr. 30); and no limitation in health and physical well-being (id.).

The law judge, therefore, determined that the child was not disabled (id.).   The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits.   The Act provides (42 U.S.C. 1382c(a)(3)(C)(i)):

3

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924(c). If he does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then he is deemed

disabled.   20 C.F.R. 416.924(d)(1).   If he does not, then he will be found not disabled.   20 C.F.R. 416.924(d)(2).

When determining functional equivalence, which is the focus of the plaintiff's challenge in this case, a child's limitations in the following six domains of functioning are evaluated: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being.   20 C.F.R. 416.926a(b)(1).

An impairment functionally equals a listed impairment if the plaintiff shows that the child has an extreme limitation in one, or a marked limitation in two, of the six domains of functioning.   20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability independently to initiate, sustain, or complete activities.   20 C.F.R. 416.926a(e)(2)(i).   It means a limitation that is more than moderate, but less than extreme.   Id.   An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability

independently to initiate, sustain, or complete activities.    20 C.F.R. 416.926a(e)(3)(i).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence.    42 U.S.C. 405(g).    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.    Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).    Under the substantial evidence test, findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.    Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.    Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).    Similarly, it is the responsibility of the Commissioner to draw inferences from the

6

evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff does not challenge the law judge's finding that the child does not meet or medically equal a listing (Doc. 20).   Rather, she argues that the law judge erred in his evaluation of two of the six domains which, if properly evaluated, would show that the child functionally equaled a listing.

7

Specifically, the plaintiff argues that the law judge should have found that K.M.W. had marked limitations in the domains of attending and completing tasks and interacting and relating with others (id., pp. 14, 19). If the plaintiff establishes that argument with respect to both of those domains, the child would be considered functionally equivalent to a listing and, therefore, disabled.   See 20 C.F.R. 416.926a(a) (An impairment functionally equals a listed impairment if the plaintiff shows that the child has a marked limitation in two of the six domains of functioning.).   On the other hand, if the plaintiff does not show that the law judge erred with respect to both of the domains, the plaintiff's challenge to the decision fails.

The regulations provide that a marked limitation arises "when [the child's] impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 416.926a(e)(2)(i).   Furthermore, a marked limitation is one that is "more than moderate" but "less than extreme.'" Id.

The plaintiff first argues that the law judge's evaluation of the domain of interacting and relating with others is deficient (Doc. 20, pp. 14–

8

18).    This domain considers the child's ability to initiate and sustain

emotional connections with others, develop and use language, cooperate

with others, comply with rules, respond to criticism, and respect and take

care of the possessions of others.    20 C.F.R. 416.926a(i).

    The law judge found K.M.W. has less than marked limitations

in interacting and relating with others.    He stated (Tr. 28):

> The claimant's guardian testified that the
> claimant gets angry and cries and had
> significant behavior problems at school
> including destroying things. The record also
> notes that he was hitting the school staff,
> yelling, leaving his area, and would not follow[]
> directions; however, he plays well with other
> children. (Ex. 4F, 6F). His teacher also reported
> difficulty with anger management mainly
> directed towards himself in 2017, but also notes
> improvement. (Ex. 4E). In addition, his
> behavior greatly improved after he was treated
> with medication. His guardian testified to a 95%
> to 100% improvement in his behavior and his
> treatment records at Pediatric Neurology
> Associates note that he was cooperative and had
> a normal mood and affect after he was taking
> medication. (Ex. 10F). Furthermore, his teacher
> notes that almost all speech can be understood
> on the first attempt. (Ex. 4E). His speech
> evaluation notes a 90% speech intelligibly for a
> known topic for a familiar listener and 75% for

unfamiliar listener and normal limits in behavior, voice, fluency, and articulation. (Ex. 5F). Therefore, the record evidence is consistent with a finding of less than marked limitation.

The plaintiff does not challenge these findings by the law judge. Rather, as the Commissioner points out, "[w]hile Plaintiff believes the ALJ should have interpreted the evidence differently and made a different finding about the domain, she fails to show the ALJ—the trier of fact—erred in this case" (Doc. 21, p. 9). The court is not allowed to reweigh the evidence and substitute its opinion for that of the law judge, even if the evidence preponderates against the decision. Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005).

In other words, the court must give deference to the law judge's findings. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). And that deference is even more important with respect to the findings regarding the domains of functional equivalence. The criteria for evaluating the domain of interacting and relating with others (like most of the other domains) are remarkably ill-defined. Thus, a marked limitation is "more than moderate." It is also described as an impairment which "interferes seriously" with the

10

ability to independently initiate, sustain or complete activities.   20 C.F.R. 416.926a(e)(2).   Those hazy standards mean that the law judge has a broad range when exercising his judgment in determining whether the child has a marked limitation.   Accordingly, there is even more reason not to second guess the law judge's finding on that issue.

Moreover, even without the deference due the law judge's decision, the plaintiff's challenge to the law judge's finding on interacting and relating with others fails.   On that issue the plaintiff cites a report of October 4, 2017, from the child's pre-kindergarten teacher.   The law judge acknowledged that report but reasonably discounted it because the observations were made before the child was on medication (Tr. 25, 27). While the plaintiff also cites to other items in the record, those pieces of evidence do not compel a finding, contrary to that of the law judge, that the child had a marked limitation in interacting and relating with others for a period of twelve months.   Adelfemi v. Ashcroft, supra, 386 F.3d at 1027.[3]

_____

[3]Notably, the plaintiff does not make a claim, and related showing, of a closed period of benefits.

11

As indicated, in order to overturn a finding in an administrative decision under the substantial evidence test, the evidence must compel the contrary finding.    The conclusion that the evidence does not compel a finding of a marked limitation in the domain of interacting and relating with others is strongly supported by medical opinions of four state agency consultants.    Thus, at the initial determination level, a psychologist and a pediatrician concluded that the child had less than a marked limitation in the domain of interacting and relating with others (Tr. 83, 84).    Further, at the reconsideration level a different set of a psychologist and a pediatrician also found that the child had less than a marked limitation in that domain (Tr. 95, 96).    The law judge found that those experts' assessments were "very persuasive" (Tr. 25).    In light of those four medical opinions supporting the law judge's finding of a less than marked limitation in interacting and relating with others, it is not reasonable to conclude that the evidence compels a contrary finding.    Consequently, as previously explained, the plaintiff's challenge to the decision fails because the plaintiff had to demonstrate error with respect to both of the domains she attacked.

Moreover, the plaintiff does not demonstrate error in the law judge's assessment of the domain of attending and completing tasks.   That provides a further basis for rejecting the plaintiff's challenge.

An assessment of the attending and completing tasks domain generally entails consideration of how well the child is able to focus and maintain attention and begin, carry through, and finish activities, including the pace at which the child performs activities, and the ease with which the child changes them.   When evaluating this domain, the law judge stated (Tr. 27):

> The claimant's guardian testified that the claimant is antsy.   His teacher also noted very serious problems in this area in 2017, but some improvement.   The claimant needed cues to stay with an activity and stay focused during his Pre-Kindergarten Assessment. (Ex. 2F). In addition, he was hyperactive and easily distracted at his initial appointment with Pediatric Neurology Associates. (Ex. 10F). However, these observations were prior to the claimant being on medication. After [the claimant] started receiving medication treatment, his most recent IEP notes that he was able to control his impulses to leave the assigned area ... 80% of the time in the morning (Ex. 15E). His later exams at Pediatric Neurology Associates after he was medicated note

13

that he had a normal attention span and concentration (Ex. 10F). Accordingly, the record supports a finding of less than marked limitation.

The law judge also stated (Tr. 28):

The claimant's guardian testified that the claimant gets angry and cries and had significant behavior problems at school including destroying things. The record also notes that he was hitting the school staff, yelling, leaving his area, and would not follow[] directions; however, he plays well with other children. (Ex. 4F, 6F). His teacher also reported difficulty with anger management mainly directed towards himself in 2017, but also notes improvement. (Ex. 4E). In addition, his behavior greatly improved after he was treated with medication. His guardian testified to a 95% to 100% improvement in his behavior and his treatment records at Pediatric Neurology Associates note that he was cooperative and had a normal mood and affect after he was taking medication. (Ex. 10F). Furthermore, his teacher notes that almost all speech can be understood on the first attempt. (Ex. 4E). His speech evaluation notes a 90% speech intelligibly for a known topic for a familiar listener and 75% for unfamiliar listener and normal limits in behavior, voice, fluency, and articulation. (Ex. 5F). Therefore, the record evidence is consistent with a finding of less than marked limitation.

The plaintiff indicates that the law judge only evaluated the child in the morning and should have evaluated him for the entire day (Doc. 20, p. 21).   The law judge, however, clearly considered the plaintiff's entire day and recognized that the effects of the medications were less later in the day.   The law judge reasonably concluded that the situation "could be managed with timing of administering the medication" (Tr. 24). Significantly, the plaintiff testified that "they wanted me to give it [Focalin] to him at school" (Tr. 58).   The law judge also pointed out that the child "began individual therapy in 2019, which could also account for his improved behavior" (Tr. 24).

In addition, the two psychologists and the two pediatricians all opined that the child had a less than marked limitation in the domain of attending and completing tasks (Tr. 83, 95).   Those opinions confirm that the evidence does not compel a finding of a marked limitation in that domain.

The plaintiff argues that the law judge's explanation is erroneous in light of the child's teacher's questionnaire of October 4, 2017.

15

However, as previously discussed, the law judge reasonably discounted the comments in that document.

Finally, the plaintiff argues that the law judge "erred in the evaluation of the opinions of the State agency consultants" (Doc. 20, pp. 21–22).   This argument lacks merit.

Significantly, as the Commissioner points out (Doc. 21, p. 15), the law judge considered the factors of supportability and consistency, which are the primary factors in evaluating medical opinions (see Tr. 25). Further, he stated reasons for finding the opinions "very persuasive" (id.).

The plaintiff argues that "[o]ne reason given was that multiple consultants reviewed the evidence independently and arrived at the same conclusions" (Doc. 20, p. 21), and that this was not completely accurate because, at each level, one expert was a medical doctor (in fact, a pediatrician) and one was a psychologist (see Tr. 84, 96).   However, since they each viewed the domain in question from a different perspective, that would seemingly strengthen the overall conclusion (or at least the law judge

could reasonably think so).   In short, the plaintiff's quibbles about the experts' opinions are meritless.

Furthermore, even if the law judge erred in evaluating the experts' opinions, the error would be harmless.   Thus, while the opinions obviously bolstered the law judge's conclusion, he did not rely heavily on them.   Rather the law judge cogently explained at length why the child had less than a marked limitation on the two domains at issue. As explained, if the law judge is affirmed on either one of them, the plaintiff's claim fails.

IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error.   I, therefore, recommend that the decision be **AFFIRMED** and the case closed.

Respectfully submitted,

Thomas G. Wilson

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER 29, 2021.

17

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions or to seek an extension of the fourteen-day deadline. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

18